Mario Pittoni, J.
At the trial, plaintiff wife established a cause of action for separation. This was uncontested and a judgment of separation was granted. However, there still remain the other questions to be decided, that is, ownership and right of possession of their marital home and their bank accounts, custody of their infant son, alimony for the wife and support for the child, counsel fees, etc.
The facts established by the pleadings, by uncontested and by unimpeached testimony establish that these litigants were married on December 3, 1961. Prior to the marriage, plaintiff was a widowed school teacher with two infant sons, one born *744 in 1952 and the other in 1955. Defendant was several years older than plaintiff and until this marriage was a bachelor. Difficulties arose immediately over the claimed exorbitant expenditures by plaintiff. At first the disputes were mild, but sometime in 1963 arguments concerning her expenditures increased in violence and at times were accompanied by physical violence. About July 31, 1963 the parties lived separately for awhile, but about a month thereafter they lived together again. Disputes continued, so that from the latter part of November until December 20, 1963 they merely lived under the same roof, but not as husband and wife. On December 20,1963 the litigants finally separated and have continued to live apart since then.
Prior to their marriage plaintiff was the sole owner of a one-family house at 18 Hope Lane, Hicksville, Long Island, which she had gotten as the survivor of ownership by the entirety upon her first husband’s death. Sometime after their marriage, about October 16, 1962, plaintiff executed a deed to herself and defendant jointly. Also, during their marriage, various bank accounts owned by both were put in their joint names. This property and these joint accounts will be discussed more fully later on.
Prior to this marriage plaintiff was employed as a school teacher, earning approximately $5,500 per year and receiving monthly benefits ftbr herself and her two children from the Veterans’ Administration and Social Security.
Defendant is a certified public accountant and has been employed from time to time in various firms at salaries approximating $14,000 per year. However, at present he is employed by Estey Electronics Corp., Hicksville, Long Island, at a salary of $10,000 per year, and his employer is now in the bankruptcy court pursuant to a chapter XI proceeding. It is also pertinent in this respect that defendant was unemployed in May and June of 1962 and from March, 1963 to October, 1963.
The assets involved are the following: (1) House and real property at 18 Hope Lane, Hicksville, N. Y., (2) $2,700 withdrawn by defendant, and $33 balance of the joint account in West Side Federal Savings and Loan Association, (3) the joint account in Williamsiburgh Savings Bank, in trust for Neal Steinhardt, (4) The joint account in Williamsburgh Savings Bank, in trust for Robert Steinhardt, (5) the joint account in Nevada Savings and Loan Association, in trust for Robert Jokel, (6) the joint account in Nevada Savings and Loan Association, in trust for Neal Jokel, (7) the joint account in Nevada Savings and Loan Association, in trust for Henry Steinhardt Cohen, (8) the joint account in Trans-Bay Federal *745 Savings and Loan Association, No. 13164, (9) proceeds of sale of defendant’s bond deposited in savings account in defendant’s name in Nevada Savings and Loan Association, No. 30,664.
During the trial, defendant withdrew any claim on items 5 and 6, that is, the accounts in the Nevada Savings and Loan Association, in trust for Robert and Neal Jokel, and agreed to return these moneys to plaintiff for the benefit of Robert and Neal.
Plaintiff moved at the start of the trial, and again at the close of the case, for a determination of title to the real property and money involved, pursuant to section 234 of the Domestic Relations Law. In each case, decision was reserved on these motions and these motions are now granted. The court has the power, under section 234 of the Domestic Relations Law, to determine all questions between the parties concerning title to real and personal property upon proper evidence. This section reads in part as follows: “In any action * * * for a separation * * * the court may (1) determine any questions as to the title to property arising between the parties ”. This section expanded and replaced section 1164-a of the Civil Practice Act which permitted the court to make a direction as to occupancy of realty only. All other questions raised as to title had to be decided in a separate cause of action. Section 234 of the Domestic Relations Law now eliminates that necessity and expressly permits the court to determine questions as to title as to personalty as well as to realty. Defendant’s objection that facts to establish title have not been pleaded in the complaint is refuted by a reading of the complaint itself. True, plaintiff has stated no separate cause of action for a declaration of title, but the necessary facts are pleaded in paragraphs 26, 27, 31, 32 and 33, and the relief is sufficiently requested in the “ Wherefore ” clause. It would have been a more lawyer-like pleading to have a separate cause of action for the issue of title so as to separate that issue from the basic separation issues, but the facts are stated, they cannot be ignored, and defendant’s claim of surprise is unavailing since the facts are stated. Justice shall not be denied for technical inaccuracy of pleading.
The undisputed evidence is that the parties transferred their properties into joint ownership at a time when they emotionally felt that theirs was an enduring idealistic marital partnership. They intended to own all their properties jointly during this marriage which, after a short period, has now broken asunder. Clearly, there was no intent on the part of either party for this joint ownership to continue after their *746 marriage was broken, so broken that they are now inimical to the point of hatred. Therefore, to the best of my ability, I shall try to partition the properties between them and determine title pursuant to section 234 of the Domestic Relations Law and in accordance with realities of ownership.
Defendant supplied no consideration for the house. All he supplied was persuasion, exercised upon plaintiff, that it would be best for both that she transfer the house into their joint ownership. I do not find any intent by plaintiff to make a gift. I, therefore, order defendant to deed his share of the house and real property at 18 Hope Lane, Hicksville, N. Y., to plaintiff as sole owner.
Defendant shall also pay to plaintiff $2,700, previously withdrawn from the | West Side Federal Savings and Loan Association, and shall transfer the savings account book for that account to plaintiff.
Defendant shall also transfer to plaintiff items 3 to 7 mentioned above.
Defendant may retain items 8 and 9 mentioned above, that is, the Trans-Bay Federal Savings and Loan Association account No. 13164, and the Nevada Savings & Loan Association account No. 30664. j
I have, to the bést of my ability, partitioned the property jointly owned so as to put the parties as near as possible in the financial position respecting assets as they were before their ill-fated entanglement. I believe that section 234 of the Domestic Relations Law gives that power in accordance with realities of ownership.
Now, for alimony,and support of their child, Henry. Although in the past defendant’s income averaged over $14,000 per year, the last several years have been financially precarious. In May and June, 1962 defendant was unemployed. Again, from March to October, 1963 defendant was unemployed. In that year defendant earned approximately $7,000. At present defendant is employed at $10,000 per year, with a take-home pay of $163 per week, by a corporate employer which is in the bankruptcy court pursuant to a chapter XI proceeding. Against this, plaintiff continued and created charge accounts in some of the best and most expensive stores in Nassau County, such as Lord & Taylor,j Abraham & Straus, Himbel’s, Saks Fifth Avenue, B. Altman, Bonwit Teller, Hertz and Macy’s. There she spent far more than their financial status and income warranted; in fact, she spent approximately $1,000 per month even during defendant’s period of unemployment in 1963. Of course, a good part of this expenditure, which included living *747 expenses, came out of capital. In short, plaintiff overspent in disregard of their assets and of defendant’s income. Her propensity for overspending is demonstrated by her charge account spending of $1,700 in the two months following their separation and after the separation action was started. Summarizing, plaintiff has created a self-imposed standard of living entirely at variance with and beyond their assets and income.
Plaintiff has by her remarriage lost her widow’s pension. She still does receive from the Veterans’ Administration and from Social Security $215 per month for the support of her two sons by her former marriage.
However, considering the assets now allotted or partitioned herein, plaintiff’s earning capacity as a school teacher, plaintiff’s prior living conditions, the short duration of their marriage, defendant’s capacity, income and precarious employment, and the income tax impact upon both by any award made herein, I award plaintiff for alimony, $60 per week, and for support of their child, Henry, $20 per week.
Custody of their child is awarded to plaintiff. However, defendant shall have the right to visit their child at plaintiff’s home on each and every Sunday between 2:00 p.m. and 5:00 p.m., and also on Thanksgiving, Christmas, and on any holy days, to be suggested by letters which shall accompany the proposed judgments to be submitted on notice.
The attorney for the plaintiff has been sufficiently compensated by the order made on the motion for temporary alimony, etc. The isue of separation was uncontested, and the trial was overly extended and unnecessarily drawn out on the question of alimony, support and title. In short, no additional counsel fee to plaintiff is warranted.